IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TODD WEST,**                                    Case Number 1:15 CV 669

     Petitioner,                              Judge James S. Gwin

     v.                                       Magistrate Judge James R. Knepp II

**MAGGIE BRADSHAW**, Warden,

     Respondent.                              REPORT AND RECOMMENDATION

### INTRODUCTION

*Pro se* Petitioner Todd West ("Petitioner"), a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Respondent, Warden Maggie Bradshaw, filed an answer (Doc. 12) with supplemental exhibits and transcripts (Docs. 12-1 – 12-7). Petitioner filed a reply (Doc. 16), to which Respondent filed a sur-reply (Doc. 17). Petitioner also filed a supplemental response (Doc. 21), to which Respondent replied (Doc. 25). Petitioner then filed a second supplemental response. (Doc. 26). The district court has jurisdiction over this petition under 28 U.S.C. § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated April 15, 2015). Following review and for the reasons stated below, the undersigned recommends the Petition be denied.

### FACTUAL BACKGROUND

For purposes of federal habeas corpus review of state-court decisions, findings of fact made by the state court are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, those factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th

Cir. 2004). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial-court record. *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). In this case, Ohio's Eighth District Court of Appeals set forth the following findings of fact:

{¶ 6} In September 2010, the Cleveland police began investigating Timothy and Todd. During the investigation, the police learned that the brothers owned the property located at 2341 Scranton Road, and that they had purchased the property for $110,000 cash in May 2010. The police also learned that each man owned a home in Westlake.

{¶ 7} The trial testimony revealed that there is a short driveway for the Scranton Road property that leads to a locked gate and chain link fence. A large commercial building is located inside the gated and fenced portion of the property. On November 3, 2010, Cleveland police conducted surveillance of the property. During the surveillance, the police observed a van, driven by Timothy, arrive at the property, followed shortly by the arrival of an Oldsmobile, driven by Todd. Upon their arrivals, each defendant drove his vehicle into the driveway, got out of his vehicle, unlocked the padlock, and opened the gate. The defendants then got back into their vehicles, drove beyond the gate, then got out of their car again and closed and locked the gate. Todd and Timothy then drove their vehicles to the garage bay doors, opened the garage doors, pulled their cars into the garage, and then closed the door.

{¶ 8} After Timothy and Todd left the property that day, the police walked the perimeter of the building and smelled a strong odor of marijuana. The police obtained a warrant to search the building; they also obtained warrants to search Timothy and Todd's homes.

{¶ 9} On the day of the searches, November 5, 2010, the officer who had surveilled the Scranton Road property two days earlier again conducted surveillance of the property. The officer saw the same two vehicles from the November 3 surveillance arrive at the property separately, but very close in time, and again driven by Todd and Timothy. Todd arrived first driving the Oldsmobile. He went through the same motions as on November 3: stopped the car in the driveway, got out and unlocked the gate, got back into the car and drove past the gates, got out, closed and locked the gate, drove the car to the garage, opened the garage, drove in, and shut the garage door. Timothy arrived shortly after Todd, and went through the same motions from November 3 and that Todd had just gone through moments before.

{¶ 10} During the officer's surveillance of the property, no other vehicles or persons arrived. Eventually, Todd left the building and after seeing Todd drive the Oldsmobile out of the garage, the officer contacted other officers to move in. Todd was detained when he got out of his car to unlock the gate. The police informed Todd

that they were there to execute a search warrant and informed him of his Miranda rights, which Todd indicated he understood.

{¶ 11} An officer stayed outside the building with Todd while other law enforcement officials executed the search inside the building. The officer asked Todd if there was any marijuana inside the building; Todd responded "lots." Todd elaborated that there were "a lot, hundreds, maybe a thousand" marijuana plants in the building. When the police asked him how many plants were ready for harvest, Todd responded, "lots, you got us good." When further asked where he kept his money, Todd replied "we haven't had a chance to sell anything yet, there is no money."

{¶ 12} Meanwhile, the officers executing the search found the main door to the building was padlocked, as was the basement door. The officers who searched the basement had to wear face masks because the odor of marijuana was so overwhelming. Timothy was found coming from an office area in the warehouse.

{¶ 13} The police recovered hundreds of marijuana plants growing primarily in the basement and in one or two of the first floor rooms. The plants weighed a total of approximately 55,000 grams. The police also recovered numerous criminal tools, including "grow lights," ventilation systems, soil, chemicals, packaging material, plant stakes, plastic gallon-sized and sandwich-sized bags, and scales.

{¶ 14} A gallon-sized plastic bag containing marijuana was recovered from the trunk of Todd's vehicle. When asked by the police if the bag of marijuana was a pound, Todd said it was 170 grams. A forensic scientist from the Cuyahoga County Regional Forensic Science Laboratory testified that the weight of the bag and contents was 173.5 grams.

{¶ 15} The police recovered $280 from Timothy's person and an electric timer was found during a search of his van. Papers and money were seized from Timothy and Todd's homes: $1,313 from Timothy's house, and $2,700 from Todd's house.

{¶ 16} After Todd and Timothy had been together for about an hour, Todd denied talking to the police and making any statements. Todd admitted that he owned the building and stated that he leased part of it to a man named Adam Flanik.

*State v. West*, 2012 WL 6727613, at *1-3 (Ohio Ct. App. Dec. 27, 2012).

3

### PROCEDURAL BACKGROUND

On March 29, 2011, a Cuyahoga County Grand Jury indicted Petitioner on charges of illegal manufacture of drugs or cultivation of marijuana, drug trafficking, drug possession, and possessing criminal tools. (Doc. 12-1, Ex. 2, at 30-38). All charges carried forfeiture specifications. *Id.*

Petitioner, though counsel, filed a pre-trial motion to suppress the following evidence: (1) evidence obtained from thermal imaging "flyovers" of his house, co-defendant Timothy West's house, and a commercial building that he and Timothy jointly owned at 2341 Scranton Road in Cleveland, Ohio; (2) evidence obtained from the actual searches of those premises; and (3) any statements obtained from Todd West in violation of his Fifth Amendment rights. (Doc. 12-1, Ex. 3, at 39-42). The trial court conducted a hearing on the suppression motion as it related to Todd West's statements. (Doc. 12-2, Trial Tr. vol. 1, at 163-90, 203). Defense counsel waived a hearing, however, as to the other evidence subject to the suppression motion. *Id.* at 16-17. The court denied the motion. *Id.* at 203.

The case proceeded to jury trial on September 12, 2011. *See id.* at 22-24. After the state rested, Petitioner, though counsel, moved for acquittal, which the court denied. (Doc. 12-4, Trial Tr. vol. 3, at 100-01; Doc. 12-1, Ex. 4, at 43). On September 16, 2011, the jury found Petitioner guilty of all charges. (Doc. 12-1, Ex. 5, at 44). The trial court sentenced Petitioner that same day. *Id.* It merged Petitioner's drug trafficking and drug possession convictions for sentencing purposes. *Id.* And it sentenced him to a mandatory eight years' imprisonment for both the illegal drug manufacture or cultivation of marijuana and drug trafficking convictions, to be served consecutively, and twelve months' imprisonment for possession of criminal tools, to be served concurrently, for a total of sixteen years' imprisonment. *Id.* The court also ordered that Petitioner forfeit all items

4

listed in the forfeiture specifications, and imposed a $7,500 mandatory fine for both the illegal drug manufacture or cultivation of marijuana and drug trafficking convictions. *Id*.

On December 28, 2011, the trial court held a forfeiture hearing. (Doc. 12-1, Ex. 11, at 63). On January 13, 2012, it issued a final order of sentencing and forfeiture, finding, in relevant part, that the forfeiture of parcels 004-10-005 and 004-10-006, described as 2341 Scranton Road in Cleveland, Ohio, and the other forfeited property were not disproportionate to the seriousness of the offense. *Id*.

**Direct Appeal**

Petitioner, through new counsel, filed a timely notice of appeal to the Eighth District Court of Appeals, Cuyahoga County, Ohio. (Doc. 12-1, Ex. 17, at 74-75). In his appellate brief, he raised the following assignments of error:

1. The trial court erred in failing to hold an evidentiary hearing, make factual findings, or rule on Appellant's motion to suppress evidence.

2. The trial court erred in denying Appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove the elements of trafficking or cultivation/manufacturing of marijuana.

3. The trial court erred in sentencing Appellant to maximum consecutive sentences on counts one and two of the indictment.

(Doc. 12-1, Ex. 20, at 81). With leave of court, Petitioner filed a supplemental appellate brief through counsel and raised the two following additional assignments of error:

4. The trial court erred in ordering forfeiture of the real property known as permanent parcel nos. 004-10-005 and 004-10-006.

5. The trial court erred by ordering forfeiture of property the value of which was disproportional to the severity of the offense.

(Doc. 12-1, Ex. 22, at 127).

5

On December 27, 2012, the state appellate court affirmed in part and reversed in part the trial court's judgment. (Doc. 12-1, Ex. 1, at 7-29); *West*, 2012 WL 6727613.  It affirmed the trial court's ruling on the motion to suppress, the drug trafficking conviction, and the forfeiture order. (Doc. 12-1, Ex. 1, at 28); *West*, 2012 WL 6727613, at *10. But the court of appeals reversed the judgment as to its sentence on both the trafficking in drugs and cultivation and manufacture convictions, and remanded the case for merger of those counts. *Id.* The state was to elect which count to proceed to sentencing on. *Id.* Petitioner, *pro se*, moved for reconsideration of the appellate court decision, which the court denied. (Doc. 12-1, Exs. 25, 27, at 176-78, 184).

On January 31, 2013, Petitioner, *pro se*, filed a timely notice of appeal in the Supreme Court of Ohio. (Doc. 12-1, Ex. 28, at 185-86). In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

1.    The trial court erred in failing to hold an evidentiary hearing, make factual findings, or rule on Appellant's motion to suppress evidence.

2.    The trial court erred in denying Appellant's Criminal Rule 29 motion for acquittal when there was insufficient evidence to prove the elements of trafficking, court two of the indictment.

3.    The trial court erred in ordering forfeiture of the real property known as parcel nos. 004-10-005 and 004-10-006.

4.    The trial court erred by ordering forfeiture of property the value of which was disproportional to the severity of the offense.

(Doc. 12-1, Ex. 29, at 188). On February 11, 2013, Petitioner filed a *pro se* amended notice of appeal and memorandum in support of jurisdiction, raising five additional propositions of law:

5.    The conviction was obtained by the trial court violating the [A]ppellant's [F]ourth [A]mendment right to suppress evidence from an illegal search without conducting an evidentiary hearing.

6.      The conviction for trafficking violates the [F]ourteenth [A]mendment protection of the federal constitution to due process when it is not supported by sufficient evidence.

7.      The forfeiture of the real property known as parcel Nos. 004-10-005 and 004-10-006 violates the Appellant's due process when the indictment only identifies one parcel for forfeiture.

8.      The forfeiture of the real property known as parcel Nos. 004-10-005 and 004-10-006 violates the Appellant's due process since the value is disproportional to the severity of the offense.

9.      The court of appeals lacked subject matter jurisdiction to entertain the appeal since a final order was not issued by the trial court.

(Doc. 12-1, Exs. 30, 31, at 204-05, 207).

On May 8, 2013, the Ohio Supreme Court declined jurisdiction. (Doc. 12-1, Ex. 32, at 217).

**First Post-Conviction Proceedings**

Meanwhile, on May 3, 2012, Petitioner filed a timely *pro se* petition for post-conviction relief in the trial court, raising the following claim:

The [c]onviction was obtained with [i]neffective [a]ssistance of [t]rial [c]ounsel violating the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

He also included the following "Statement of Facts and Law Supporting Constitutional Claim":

The petitioner is in the process of obtaining evidence that trial counsel failed to perform a diligent investigation to establish a proper defense.

(Doc. 12-1, Ex. 33, at 219). That same day, he filed a *pro se* motion to stay his petition and hold it in abeyance for sixty days to allow him time to gather evidence to support his ineffective-assistance claim. (Doc. 12-1, Ex. 34, at 221).

On July 6, 2012, Petitioner filed a *pro se* "Motion with Leave to Amend the Petition." (Doc. 12-1, Ex. 35, at 223-48). He sought to add the following claim:

7

> Trial counsel failed to challenge the unconstitutional search and seizure of evidence at 2341 Scranton Avenue, along with the probable cause affidavit containing prejudicial hearsay testimony by Detective Joseph Bovenzi of the Cleveland Police Department.

*Id.* at 225. He essentially argued trial counsel was ineffective for failing to challenge the search warrant on the grounds that the flyover occurred before the warrant actually issued and that the affidavit supporting the request for a search warrant was based on hearsay. *Id.* at 225-27. On September 26, 2012, the state filed a motion for leave to file a response to the petition and motion for leave to amend, and a brief opposing both. (Doc. 12-1, Exs. 36, 37, at 249-51, 252-57).

On October 11, 2012, the trial court denied Petitioner's motion for leave to amend his post-conviction petition. (Doc. 12-1, Ex. 39, at 264). The record indicates that, at that time, the trial court did not rule on Petitioner's original petition or motion to stay, and Petitioner did not appeal the trial court's denial of his motion to amend.

On July 8, 2013, Petitioner filed a *pro se* "Motion for Leave to Amend the Attached Second Amended Post Conviction Petition" and "Second Amended Petition." (Doc. 25-13, Ex. 87; Doc. 25-14, Ex. 86). He raised the following claims in his "second amended petition":

> 1. The [c]onviction was obtained with [i]neffective [a]ssistance of [t]rial [c]ounsel violating the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution when counsel waived the suppression hearing to challenge the thermal imaging fly-over. . . . [T]he investigating officers perjured testimony in the sworn affidavit to obtain the search warrant at the Scranton Rd. Property claiming they conducted a fly-over after obtaining a search warrant . . .; however, the actual warrant and thermal imaging evidence do not exist.

> 2. The [c]onviction was obtained with [i]neffective [a]ssistance of [t]rial [c]ounsel violating the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution when counsel failed to challenge the search conducted prior to the judge signing the search warrant. . . .  The search warrant issued for the Scranton Ave. property is not time stamped or identified when the warrant was issued . . . .

8

3.      The [c]onviction was obtained with evidence obtained violating the Petitioner's Fourth Amendment [r]ight to [r]easonable [s]earch and [s]eizure.

4.      The Petitioner was denied his due process rights when the prosecution committed misconduct by failing to disclose evidence that was favorable evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963) and its progeny.

5.      The Petitioner was denied a fair trial when false and misleading testimony was used to obtain the search warrant for the Scranton Ave. building.

(Doc. 25-13, Ex. 86, at 3-4, 5, 7, 8). Petitioner attached several exhibits in support of these claims. *Id*. at 12-31.

On August 22, 2013, the state filed a motion requesting seven additional days, until August 29, 2013, in which to respond to the motion for leave and petition. (Doc. 25-15, Ex. 88). On August 27, 2013, the trial court summarily denied Petitioner's second amended petition and motion for leave to amend. (Doc. 25-16, Ex. 89; Doc. 25-17, Ex. 90).

On September 6, 2013, the trial court issued an opinion. (Doc. 25-2, Ex. 75). In it, the court first construed Petitioner's July 8, 2013, motion as a motion for leave to amend his original petition, and denied leave. *Id*. at 4. Nevertheless, it then acknowledged that while it previously denied Petitioner's first motion for leave to amend his original petition, it neglected to deny the original petition or issue findings of fact and conclusions of law. *Id*. Therefore, "for the benefit of [Petitioner,]" the court stated, it would construe Petitioner's July 8, 2013, motion as a motion for leave to amend his original petition rather than a successive petition for post-conviction relief, and consider arguments presented in both motions to amend the petition. *Id*. The court proceeded to deny Petitioner's ineffective-assistance claims on the merits without an evidentiary hearing on the grounds that: (1)  the warrant was signed the day it was executed, there is no requirement that a warrant be time-stamped to be valid, and there was not evidence the warrant was not signed prior

to execution; (2) hearsay can support a search warrant affidavit under Ohio criminal procedure rules; and (3) the thermal imaging warrants were obtained by law enforcement and copies of the warrants were provided to defense counsel, who then moved to suppress the evidence obtained as a result of them, the clerk of court's failure to locate the warrants is not proof that the warrants did not exist, and even if the warrants were not properly returned to the clerk's office, such a failure would not warrant relief. *Id*. at 4-5. The court further rejected Petitioner' Fourth Amendment claim that police obtained thermal images without a warrant, finding they did obtain the warrants and the warrants were provided to defense counsel. *Id*. at 5. The court also found no merit to Petitioner's claims of prosecutorial misconduct. *Id*. Finally, the court found all claims barred by the doctrine of *res judicata* because they could have been raised on direct appeal. *Id*. at 6.

On September 25, 2013, Petitioner filed a timely *pro se* notice of appeal. (Doc. 25-3, Ex. 76). In his appellate brief, he raised the following assignments of error:

1. The trial court abused its discretion when it determined defense counsel was not ineffective when he waived the suppression hearing.

2. The trial court abused its discretion when it denied the Appellant's third ground in his petition when the officers performed a thermal imaging fly-over of the Scranton Ave. property without a warrant.

3. The trial court abused its discretion when it denied Appellant's fourth and fifth ground[s] for relief, addressing the State did not obtain a search warrant and/or obtained results from the thermal imaging fly-over of the Scranton Ave. building.

4. The trial court erred when it determined the grounds addressed in the Appellant's petition are barred by the doctrine of res judicata.

5. The trial court abused its discretion when it denied West's second amended petition without an evidentiary hearing.

(Doc. 25-4, Ex. 77).

On April 10, 2014, the state appellate court affirmed the trial court's judgment. (Doc. 25-6, Ex. 79); *State v. West*, 2014 WL 1408298 (Ohio Ct. App. April 10, 2014). The court observed that because the trial court had twice denied Petitioner leave to file a second amended petition, under Ohio law governing post-conviction proceedings, it should not have considered the arguments raised in that petition. *West*, 2014 WL 1408298, at *2. It also agreed with the trial court that Petitioner's claims were barred by *res judicata,* because they could have been raised on direct appeal and were addressed in his application to reopen the appeal. *Id*. at *2-3. Petitioner filed a timely *pro se* motion for reconsideration, which the court denied. (Doc. 25-7, Ex. 80; Doc. 25-9, Ex. 82).

On June 11, 2014, Petitioner filed a timely *pro se* notice of appeal in the Ohio Supreme Court. (Doc. 25-10, Ex. 83). Petitioner raised the following propositions of law in his jurisdictional memorandum:

1. The court of appeals erred when it determined the trial counsel was not ineffective for waiving the suppression hearing prior to trial.

2. The court of appeals erred when it determined the trial court did not abuse it[s] discretion violating the [D]ue [P]rocess and [E]qual [P]rotection clause[s] when it denied the petition claiming the officers did not conduct a fly-over thermal imaging search of the Scranton Ave. property.

3. The court of appeals erred when it determined the trial court did not abuse it[s] discretion violating the [D]ue [P]rocess and [E]qual [P]rotection clause[s] when it denied the petition without a search warrant.

4. The court of appeals erred when it determined the trial court was not permitted to entertain the Appellant's second amended petition violating the Fourteenth Amendment to the United States Constitution.

(Doc. 25-11, Ex. 84). On September 24, 2014, the court declined to accept jurisdiction of the appeal. (Doc. 25-12, Ex. 85).

**Application to Reopen Direct Appeal**

Meanwhile, on March 25, 2013, Petitioner filed a timely *pro se* application to reopen his direct appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure. (Doc. 12-1, Ex. 40, at 265-76). In it, he alleged appellate counsel was ineffective for failing to raise the following assignments of error on direct appeal:

1.   The trial court erred when it held the forfeiture hearing without jurisdiction since an appeal was pending when the hearing was held to dispose the property on Scranton Ave.

2.   The trial court erred when it forfeited property owned by the Appellant that is not listed in the bill of particulars, and indictment.

3.   The Appellant was denied his due process right to a fair trial when the prosecution failed to disclose evidence favorable to an accused upon request.

4.   Trial counsel was ineffective for waiving the evidentiary hearing and failing to assure the record contains the evidence reviewed by the trial court after challenging the fly-over thermal imaging, the unlawful search and seizure of property.

5.   The trial court erred when it did not suppress the Appellant's incriminating statements after conducting a hearing.

6.   Trial court erred when it forfeited $2,700 of cash from Appellant's residence without sufficient evidence the cash was obtained from illegal drug activity.

7.   Trial counsel was ineffective when he failed to present an affidavit of indigence prior to sentencing to waive the fine, or, in the alternative, impose a $15,000 fine when both counts are allied offenses and $7,500 is the maximum amount allowed.

(Doc. 12-1, Ex. 40, at 267, 268, 270, 271, 272, 274). The state opposed the application. (Doc. 12-1, Exs. 41, 43, at 277-89, 292-303).

On January 22, 2014, the state appellate court granted Petitioner's application for reopening in part and denied it in part. (Doc. 12-1, Ex. 49, at 310). Specifically, it held:

12

Accordingly, we deny the application for reopening based upon proposed assignments of error one, two, three, four, five, and seven. We grant the application for reopening based upon proposed assignment of error six, reinstate the appeal to the docket of this court, vacate the order of forfeiture with regard to the $2,700 seized from West's residence, and order that the $2,700 be immediately returned to West.

(Doc. 12-1, Ex. 50, at 325); *State v. West*, Nos. 97398/97899, 2014 WL 265482, at *6.

Petitioner filed a timely *pro se* notice of appeal in the Ohio Supreme Court. (Doc. 12-1, Ex. 51, at 327-28). In his memorandum in support of jurisdiction, he raised the following propositions of law:

1. Appellate [c]ounsel was ineffective when he failed to address the forfeiture of the Scranton Ave. property that was not identified in the bill of particulars and the indictment.

2. Trial counsel was ineffective for waiving the evidentiary hearing and failing to assure the record contains the evidence reviewed by the trial court after challenging the fly-over thermal imaging, the unlawful search and seizure of property.

3. The trial court erred when it did not suppress the appellant's incriminating statements after conducting a hearing.

(Doc. 12-1, Ex. 52, at 330). On May 14, 2014, the Ohio Supreme Court declined jurisdiction. (Doc. 12-1, Ex. 54, at 363).

## Resentencing

The trial court resentenced Petitioner on July 24, 2014. (Doc. 12-1, Ex. 55, at 364-65). The court again merged the drug trafficking and drug possession offenses for sentencing purposes. *Id*. at 364. The state elected to proceed with sentencing on Petitioner's drug trafficking conviction, and the trial court sentenced Petitioner to a mandatory eight years' imprisonment on that charge and twelve concurrent months in prison on the possession-of-criminal-tools conviction, resulting in a

13

sentence totaling eight years' imprisonment. *Id*. The court also ordered Petitioner to forfeit all items listed in the forfeiture specifications. *Id*.

Petitioner, through counsel, filed an untimely notice of appeal in the trial court and motion for delayed appeal in the state court of appeals. (Doc. 12-1, Exs. 56, 57, at 366-70). The state appellate court granted Petitioner's motion for leave to file a delayed appeal. (Doc. 12-1, Ex. 58, at 371). Petitioner also filed a motion to consolidate his appeal with co-defendant Timothy West's appeal, which the court granted. (Doc. 12-1, Exs. 59, 60, at 372-75). Petitioner raised the following assignment of error in the appellate brief:

> Appellants were deprived of their property without due process of law where the court refused to consider the fact that they were indigent when it imposed a mandatory fine as part of their sentence.

(Doc. 12-1, Ex. 61, at 377).

On May 28, 2015, the state court of appeals again reversed and remanded the trial court's judgment. (Doc. 12-1, Ex. 63, at 416-23); *State v. West*, 2015 WL 3422099 (Ohio Ct. App. May 28, 2015). This time, it vacated the trial court's imposition of a mandatory fine and remanded the case "for the limited purpose of a consideration by the trial court of the defendants' claim of indigency." *Id*. at 325; *West*, 2015 WL 3422099, at *3.

A review of the Ohio Supreme court's online docket reveals that Petitioner did not appeal the state appellate court's judgment.

**Second Post-Conviction Proceedings**

Meanwhile, on December 31, 2014, Petitioner, *pro se*, filed in the trial court a motion for leave to file a delayed motion for a new trial. (Doc. 12-1, Ex. 64, at 424-73). In it, he raised the following claims:

14

1.      Petitioner was unavoidably prevented from discovering the new evidence within 120 days of the jury's verdict in this case.

2.      Petitioner's delay was caused by prosecutor misconduct where the prosecutor and/or the prosecutor's witness, intentionally withheld the exculpatory evidence.

3.      Failure of the prosecutor to correct false testimony of the detectives violates *Napue v. Illinois*.

(Doc. 12-1, Ex. 64, at 424, 431, 433). The trial court denied the petition on January 23, 2015. (Doc. 12-1, Ex. 66, at 483).

Petitioner filed an untimely *pro se* notice of appeal in the state appellate court. (Doc. 12-1, Ex. 67, at 484-90). On March 10, 2015, the court dismissed the appeal on timeliness grounds. (Doc. 12-1, Ex. 68, at 491).

A review of the Ohio Supreme court's online docket shows that Petitioner did not appeal the state appellate court's judgment.

**Second Resentencing**

On July 21, 2015, the trial court resentenced Petitioner a second time, pursuant to the appellate court's May 28, 2015, judgment. (Doc. 12-1, Ex. 69, at 492-93). It filed a *nunc pro tunc* order stating that "the forfeited $2,700 [was] to be returned to [Petitioner]." *Id*. at 492. The trial court also conducted a hearing on August 13, 2015, regarding Petitioner's ability to pay the mandatory fine. (Doc. 12-1, Ex. 70, at 494). It found him indigent and waived the fine. *Id*.

A review of the Eighth District Court of Appeals' online docket indicates that Petitioner did not appeal the judgment of resentencing.

FEDERAL HABEAS CORPUS

On April 6, 2015, Petitioner, *pro se*, filed the instant petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). The Petition raises the following six grounds for relief:

15

1. Petitioner's conviction was obtained in violation of the [Four]th Amendment when court denied suppression motion without a hearing and without making any findings of fact[.]

2. Petitioner's conviction for trafficking violates the [Fourteen]th Amendment when it was not supported by sufficient evidence[.]

3. Petitioner was denied effective assistance of appellate counsel when counsel failed to raise denial of trial courts [*sic* ] ruling on motion to suppress alleged incriminating statements[.]

4. Petitioner was denied effective assistance of appellate counsel when counsel failed to raise a trial counsel's ineffective assistance of appeal and properly raise motion to suppress claim[.]

5. The Petitioner was denied his constitutional rights under the due process clause when Petitioner's property under parcel 004-10-006 regarding the Scranton Road property was forfeited when said property was not listed in the indictment or bill of particulars as required under [Ohio Rev. Code §] 2981.04(A)(l) violating Petitioner's Fifth and Fourteenth Amendment's [*sic*] to the United States Constitution[.]

6. The Petitioner was denied effective assistance of trial counsel in violation of the Sixth Amendment to the United Amendment Constitution and the State and state appellate court's [*sic*] erred to the prejudice of Petitioner when Petitioner's petition for post[-]conviction relief under [Ohio Rev. Code §] 2953.21 was denied without a hearing[.]

   a. Contrary to the state court's rulings trial counsel rendered ineffective assistance when counsel erroneously waived the suppression hearing prior to trial in regards to the thermal imaging flyover and the search and seizure of evidence obtained from the Scranton Avenue property[.]

   b. Contrary to the state court rulings the Petitioner's Fourth Amendment rights were violated when law enforcement officers performed a thermal imaging flyover of the Scranton Avenue property without a search warrant and trial counsel rendered ineffective assistance of counsel when counsel waived the suppression hearing that would have challenged the alleged search warrant to conduct the thermal imaging flyover that never existed[.]

   c. Contrary to the state court rulings the Petitioner was denied his constitutional rights under the Due Process Clause when the

prosecution committed misconduct by failing to disclose evidence that was favorable to the defense under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215(1963)[.]

d.   Contrary to the state court rulings the Petitioner was denied a fair trial when false and misleading testimony was used by police to obtain the search warrant for the Scranton Avenue building and property[.]

(Doc. 1, at 4-6). Petitioner attached a memorandum in support of his grounds for relief. Respondent filed an answer (Doc. 12) with supplemental exhibits and transcripts (Docs. 12-1 – 12-7). Petitioner filed a reply (Doc. 16), to which Respondent filed a sur-reply (Doc. 17). Petitioner also filed a supplemental response (Doc. 21), to which Respondent replied (Doc. 25). Petitioner then filed a second supplemental response. (Doc. 26).

## JURISDICTIONAL ISSUES

## **Non-Cognizable Claims**

*Ground One:  Fourth Amendment Violation*

In his first ground for relief, Petitioner claims that the trial court's denial of his motion to suppress evidence obtained during thermal imaging flyovers and searches of his property without conducting an evidentiary hearing or making findings of fact violated his Fourth Amendment right against unreasonable searches and seizures. (Doc. 1, at 13-19). Respondent argues this claim is not cognizable on federal habeas review. (Doc. 12, at 29-31). The undersigned agrees.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac,* 456 U.S. 107,

121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process." (citation omitted)).  Thus, to the extent that Petitioner complains the trial court's ruling on his suppression motion violated Ohio rules of criminal procedure and Ohio case law, the claim is not cognizable on federal habeas review.

Moreover, in *Stone v. Powell*, 428 U.S. 465 (1976), the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced in his trial." *Id.* at 494. *Powell*'s limitation on federal habeas relief is not jurisdictional in nature, but rests on "prudential concerns counseling against the application of the Fourth Amendment exclusionary rule on collateral review." *Withrow v. Williams*, 507 U.S. 680, 686 (1993). Two considerations underpin *Powell's* general rule against federal habeas review of Fourth Amendment claims:  first, the "key purpose of federal habeas corpus is to free innocent prisoners[, and] whether an investigation violated the Fourth Amendment has no bearing on whether the defendant is guilty"; and, second, "exclusion is a prudential deterrent prescribed by the courts, not a personal right guaranteed by the Constitution[, so] [a]ny deterrence produced by an additional layer of habeas review is small, but the cost of undoing final convictions is great." *Good v. Berghuis*, 729 F.3d 636, 637 (6th Cir. 2013) (citing *Powell*, 428 U.S. at 490, 493).       The Sixth Circuit recently interpreted and applied *Powell* in *Good v. Berghuis, supra.* The court clarified that "opportunity for 'full and fair consideration'" under the *Powell* standard "means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim." *Good,* 729 F.3d at 639.  Thus, "[i]n the absence of a sham proceeding, there is no need to

18

ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim." *Id.* Instead, federal habeas courts "must . . . presume that, once a federal claim comes before a state court, the state judge will use a fair procedure to achieve a just resolution of the claim . . . ." *Id.* Applying these principles, the court held that *Powell* precluded federal habeas review of the petitioner's Fourth Amendment claim because, even though he was not granted an evidentiary hearing on his motion to suppress, he was able to present his motion to the state trial and appellate courts, which considered and rejected it. *Id.* at 640.[1]

Here, too, Petitioner was provided "an available avenue" to present his claim. *Id.* at 639. He filed a pre-trial motion to suppress certain physical evidence and oral statements. (Doc. 12-1, Ex. 3).  Although his counsel requested a hearing on the statements, he waived an evidentiary hearing as to the physical evidence.  He told the trial judge, "[w]ith respect to the search warrants, I'm certain that the Court will review the contents of all the affidavits in support of the search warrants and make a determination on that." (Doc. 12-2, Trial Tr. vol. 1, at 17). The state opposed the motion. *Id.* at 18.  The trial judge informed the parties she would take additional time to carefully review the

---

[1]  Petitioner points to the Sixth Circuit decision in *Bradley v. Cowan*, 561 F.2d 1213 (6th Cir. 1977), as support for the proposition that where "the petitioner was never afforded a hearing on his [Fourth] [A]mendment claim[,] the 'full and fair hearing' requirement under, *Stone v. Powell*, wasn't satisfied." (Doc. 1, at 15). The court did conclude in that case that *Powell* did not apply, because the trial court denied the petitioner's motion to suppress certain evidence without a hearing and "abruptly denied without hearing" the petitioner's subsequent objection at trial to the introduction of that evidence. *Id.* at 1215.  It then found the admission of the evidence harmless. *Id.* at 1217. But the decision, rendered just months after *Powell* was decided, did not announce any *per se* rule that *Powell* would never preclude federal habeas review where a trial court failed to conduct a suppression hearing. Indeed, two concurring opinions in *Bradley*, while agreeing with the result, disagreed about *Powell*'s application, finding the petitioner was provided "an opportunity for full and fair litigation" of his Fourth Amendment claim in the state courts, and therefore could not seek federal habeas relief on that basis, as he had raised the issue before trial by motion to suppress, at trial by objection, on direct appeal after trial, and by motion to vacate his sentence. *Id.* at 1218.

motion as it was "voluminous." *Id*. at 21. She denied the motion the following day. *Id*. at 203. Petitioner challenged that ruling on direct appeal. (Doc. 12-1, Ex. 20, at 81). The state appellate court affirmed, "presum[ing] the regularity of the trial court's proceedings" because the search warrant and supporting affidavits were not part of the record. *West*, 2012 WL 6727613, at *3-4. Later, however, in ruling on Petitioner's Rule 26(B) ineffective-assistance claim based on defense counsel's waiver of a hearing on the suppression motion, the state appellate court concluded Petitioner was not prejudiced by the lack of a hearing. It reasoned,

> [T]he testimony adduced at trial clearly demonstrated that the results of the fly-over search were merely inconclusive and that West's surreptitious movements and the extremely strong smell of marijuana, detected outside of the Scranton Road[] property[,] provided sufficient probable cause for the physical search.

*West*, 2014 WL 265482, at *4.

Thus, the state courts clearly afforded Petitioner "a full and fair consideration" under *Powell* of his Fourth Amendment claims regarding the physical evidence at issue. Petitioner complains that the state-court proceedings relating to these claims were *inadequate*, but the issue is whether they provided him an *opportunity* to assert his claims. Petitioner offers no evidence, and does not even contend, that the trial court's review of his suppression motion was a "sham proceeding." *Good,* 739 F.3d at 639. Rather, as in *Good v. Berghuis*, even though Petitioner was not afforded an evidentiary hearing or written opinion on the physical-evidence claims in his suppression motion, the trial court and state appellate court considered and rejected them. *Id*. at 640.

Accordingly, the undersigned recommends that Petitioner's first ground for relief be dismissed as not cognizable on federal habeas review.

*Ground Five:  Due Process Violation / Forfeiture Order*

20

In his fifth ground for relief, Petitioner asserts that the trial court's forfeiture order regarding the Scranton Road property violated his due process rights. (Doc. 1, at 35-37).  He argues that "the indictment failed to specifically list Parcel 004-10-006, as mandated by R.C. 2981.04(A)(1)," which governs criminal forfeiture proceedings in Ohio, leaving the trial court "without jurisdiction to include this property for forfeiture at the forfeiture hearing." *Id*. at 35. Petitioner raised this claim on direct appeal in state court. The state appellate court, the last court to address it, rejected it under the Ohio criminal forfeiture statute. *See West*, 2012 WL 6727613, at *8.

As Respondent correctly points out (Doc. 12, at 47), to the extent that Petitioner's claim challenges the state courts' decisions regarding forfeiture of his property under Ohio law, this claim is not cognizable. As noted above, a federal habeas court must defer to, and is bound by, state-court rulings on state law. *See, e.g., Estelle,* 502 U.S. at 68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

Thus, to the extent that Petitioner challenges the state appellate court's interpretation of Ohio criminal forfeiture law, his fifth ground for relief is not cognizable on federal habeas review, and the undersigned recommends that it be dismissed.

## **Procedural Default**

Procedural default occurs when a petitioner fails to fairly present his claims in a federal constitutional context to the highest state court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982). Federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . *not* resolved on the merits in the state proceeding due to [the petitioner's] failure to raise them there as required by state procedure." *Wainwright v.*

21

*Sykes*, 433 U.S. 72, 87 (1977) (emphasis in original); *see also Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

A petitioner may fail to obtain consideration of a claim by a state court by either: (1) failing to fairly raise it before the state court while state remedies are still available, or (2) failing to comply with a state procedural rule which prevents the state court from reaching the merits of the claim. *Wainwrigh*t, 433 U.S. at 80, 84-87. In either scenario, the claim is procedurally defaulted and may not be considered by the federal court on habeas review. *Seymour v. Walker,* 224 F.3d 542, 549-50 (6th Cir. 2000).

When, as here, there is noncompliance with a state procedural rule, the court conducts a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the default may be excused:

1.  Whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2.  Whether the state courts actually enforced their procedural sanction;

3.  Whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4.  Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule."  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires him to show "not merely that the errors at his trial created a

*possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[] his constitutional claim with a colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty." *Stone v. Powell*, 428 U.S. 465, 492-93, n.31 (1976).

*Ground Two: Due Process Violation / Insufficiency of Evidence*

Petitioner's second ground for relief alleges the state presented insufficient evidence to support his conviction for trafficking. (Doc. 1, at 19-23). Respondent states that petitioner "properly exhausted" this claim in state court.  (Doc. 12, at 34).  A review of the state-court record, however, suggests otherwise.

As noted above, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3)

23

phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

Here, Petitioner raised this claim on direct appeal in both the state appellate court and the Ohio Supreme Court. (*See* Doc. 12-1, Ex. 20, at 89-91; Doc. 12-1, Ex. 29, at 195-97). But he never referred to the Due Process Clause or any other federal constitutional principle underpinning a federal habeas sufficiency claim in his state-court pleadings. He made no such reference in his appellate brief in the state appellate court, and that court, the only state court to consider the claim, also did not address any federal constitutional provisions or case law. *See West*, 2012 WL 6727613, at *5. Petitioner did cite to the seminal Supreme Court decision on this issue, *Jackson v. Virginia*, 443 U.S. 307 (1979), in his memorandum in support of jurisdiction in the Ohio Supreme Court. (Doc. 12-1, Ex. 29, at 196). But he did so only to support the proposition that "[i]n criminal cases, the government must prove each and every element of the crime charged beyond a reasonable doubt." *Id*. (citing *Jackson,* 443 U.S. at 324). This reference was far too general to fairly present the substance of a federal due process claim to the state courts. *See Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004) (holding claim not fairly presented where petitioner's only citation to federal authority appeared in a section heading and petitioner "failed to develop any cogent arguments regarding those rights beyond the naked assertion that they were violated").

Furthermore, even if Petitioner did properly assert his federal due process sufficiency claim in the Ohio Supreme Court, he still did not "fairly present"it in state court for purposes of federal habeas review. Petitioners fully exhaust claims by giving state courts "one full opportunity to

24

resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To provide state courts the necessary "opportunity," petitioners must "fairly present" federal constitutional claims "in each appropriate state court" before seeking relief in the federal courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Petitioner did not meet this requirement because, at most, he fairly presented this claim only to the Ohio Supreme Court in an attempt to obtain discretionary review. "A habeas petitioner's submission of a new claim to the state's highest court on discretionary review is not a fair presentation to the state's courts." *Hruby v. Wilson*, 494 Fed. Appx 514, 517 (6th Cir. 2012) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

Moreover, Petitioner no longer is able to raise this sufficiency claim in state court. *See State v. Perry*, 10 Ohio St. 2d 175, 180 (Ohio 1967) (Ohio's *res judicata* rule precludes a defendant from raising for the first time in post-conviction proceedings a claim that was fully litigated or could have been fully litigated at trial or on direct appeal.). This claim, therefore, is procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (internal citations omitted)) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ."); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review."). And Petitioner does not offer any argument regarding either the cause for, or prejudice resulting from, his procedural default of this claim. Nor does he contend that he is actually innocent such that the default should be excused.

25

Accordingly, the undersigned recommends that the Court dismiss Petitioner's second ground for relief.[2]

*Ground Four: Ineffective Assistance of Appellate Counsel / Failure to Submit Records*

---

[2] Even if this claim were preserved for federal habeas review, it would fail. In reviewing sufficiency claims, habeas courts must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (emphasis in original). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Because both *Jackson* and the AEDPA apply to these claims, they require deference at two levels. "'First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by [the] AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). The Sixth Circuit has observed that "'[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)). As a mixed question of law and fact, a federal habeas sufficiency claim is reviewed under AEDPA's "unreasonable application" standard of § 2254(d)(1). *McDaniel v. Brown*, 558 U.S. 120, 131-33 (2010).

As the state appellate court explained, to convict Petitioner of drug trafficking, the state needed to prove beyond a reasonable doubt that he knowingly did one of the following: (1) prepared the marijuana for shipment; (2) shipped, transported, or delivered the marijuana; (3) prepared the marijuana for distribution; or (4) distributed the marijuana. *West*, 2012 WL 6727613, at *5. The state court then found

> more than sufficient evidence that the marijuana was being prepared for shipment and/or distribution. Boxes of packaging materials were recovered from the Scranton Road property, as well as other items indicative of trafficking, such as scales. Further, a package of marijuana was recovered from the trunk of Todd's car. Moreover, when questioned by the police, Todd admitted that there was "lots" of marijuana in the building and stated that he and Timothy had not "had a chance to sell anything *yet*." (Emphasis added.)

*Id*. The record fully supports the state appellate court's decision, and it is clear that a rational trier of fact could have found the essential elements of drug trafficking beyond a reasonable doubt. *Jackson,* 443 U.S. at 319. The state court's decision, therefore, was not contrary to, nor an unreasonable application of, *Jackson*.

26

In his fourth ground for relief, Petitioner claims in part that his appellate counsel provided constitutionally ineffective assistance when he failed to submit the search warrant and supporting affidavit to the state court of appeals on direct review to support his claim that the trial court erred in denying his motion to suppress evidence obtained pursuant to that search warrant. (Doc. 1, at 33-34). This claim is based on the following ruling of the state appellate court on direct appeal:

> {¶ 25} There was no hearing on the motion to suppress the evidence obtained from the thermal imaging flyovers and searches because defense counsel waived it, and the affidavits in support of the search warrant is not part of the record on appeal. As the appellant, Todd had the duty of providing this court with the complete record necessary to support his assignments of error. . . . In the absence of a complete record, this court must presume regularity in the trial court's proceedings and accept its judgment. . . . Because the affidavits in support of the search warrants are necessary to the resolution of Todd's assignment of error, this court must presume the regularity of the trial court's proceedings and affirm the judgment of the court below.

*West*, 2012 WL 6727613, at *4 (citations omitted).

Respondent states that Petitioner "properly exhausted" his appellate counsel ineffective-assistance claims. (Doc. 12, at 38). The undersigned finds, however, that this appellate counsel ineffective-assistance sub-claim is procedurally defaulted.

Petitioner never raised this claim in state court. In his Rule 26(B) application to reopen his direct appeal, Petitioner raised the claim that *trial* counsel was ineffective for failing to properly preserve for appeal the trial-court record supporting his motion to suppress. (*See* Doc. 12-1, Ex. 22, at 270-71); *West*, 2014 WL 265482, at *4. But Petitioner's habeas claim faults *appellate* counsel for failing to submit the documents to the appellate court – an entirely different claim. Moreover, Petitioner can no longer raise the claim in state court. As the state appellate court explained in reviewing Petitioner's post-conviction petition, a rule 26(B) application to reopen is a collateral post-conviction remedy to which *res judicata* applies. *West*, 2024 WL 1408298, at *3. Thus,

27

Petitioner has not given state courts "one full opportunity to resolve [this claim] by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). And it is procedurally barred from federal habeas review. *See Gray,* 518 U.S. at 161–62; *Alley*, 307 F.3d at 385. Furthermore, Petitioner offers no argument regarding the cause for, or prejudice resulting from, the default, or that he is actually innocent. The undersigned recommends, therefore, that the Court dismiss this sub-claim of Petitioner's fourth ground for relief.[3]

*Ground Five:  Due Process Violation / Forfeiture Order*

Petitioner's fifth ground for relief alleges the trial court's forfeiture order regarding the Scranton Road property violated his due process rights, because it included the parcel specified as 004-10-006 but that parcel was not listed in the indictment. (Doc. 1, at 35-37). Respondent states that Petitioner "properly exhausted" this claim as well.  (Doc. 12, at 44). Again, the undersigned disagrees.

As with Petitioner's third claim, discussed above, Petitioner raised this claim on direct appeal in both the state appellate court and the Ohio Supreme Court. (*See* Doc. 12-1, Ex. 22, at 130-32; Doc. 12-1, Ex. 29, at 197-98). However, he never referred to the Due Process Clause or any other federal constitutional principle in support of this claim in his state-court pleadings, and the state appellate court, the only state court to consider the claim, also did not address any federal

---

[3]  Even if it were not procedurally barred from review, the claim is meritless. Petitioner argues that the search warrant and supporting affidavit were missing from the record before the appellate court because appellate counsel neglected to order them from the court reporter. (Doc. 1, at 34). But there is no evidence to support this assertion. Furthermore, the records would not have changed the outcome of the appeal. Petitioner claimed in his Rule 26(B) application in state court that it was his *trial* counsel who was deficient in failing to make sure these documents were placed into the trial-court record, and the state appellate court rejected the claim, finding no prejudice as the trial testimony itself demonstrated "sufficient probable cause for the physical search." *West*, 2014 WL 265482, at *4.

28

constitutional provisions or case law.  *See West*, 2012 WL 6727613, at *8.  Thus, as explained above, Petitioner did not "fairly present" this claim in state court, and because he can no longer do so, the claim is procedurally defaulted. *See Perry*, 10 Ohio St. 2d at 180; *Gray*, 518 U.S. at 161–62; *Alley*, 307 F.3d at 385. In addition, Petitioner presents no argument regarding either cause or prejudice to excuse the procedural default, or that he is actually innocent.

As Petitioner's fifth ground for relief is both not cognizable and procedurally defaulted, the undersigned recommends that it be dismissed.

*Ground Six:  Ineffective Assistance of Trial Counsel*

For his sixth ground for relief, Petitioner claims he was denied his Sixth Amendment right to the effective assistance of trial counsel. (Doc. 1, at 37-49). He raises the following complaints:

1.   Contrary to the state court's rulings trial counsel rendered ineffective assistance when counsel erroneously waived the suppression hearing prior to trial in regards to the thermal imaging flyover and the search and seizure of evidence obtained from the Scranton Avenue property[.]

2.   Contrary to the state court rulings the petitioner's Fourth Amendment rights were violated when law enforcement officers performed a thermal imaging flyover of the Scranton Avenue property without a search warrant and trial counsel rendered ineffective assistance of counsel when counsel waived the suppression hearing that would have challenged the alleged search warrant to conduct the thermal imaging flyover that never existed[.]

3.   Contrary to the state court rulings the petitioner was denied his constitutional rights under the Due Process Clause when the prosecution committed misconduct by failing to disclose evidence that was favorable to the defense under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L.Ed.2d 215 (1963)[.]

4.   Contrary to the state court rulings the petitioner was denied a fair trial when false and misleading testimony was used by police to obtain the search warrant for the Scranton Avenue building and property[.]

(Doc. 1, at 4-6). Respondent argues these claims are procedurally defaulted. (Doc. 12, at 48-50; Doc. 25, at 6-11).

Petitioner filed his original post-conviction petition, asserting a bare-bones claim of ineffective assistance, on May 3, 2012. (Doc. 12-1, Ex. 33). On July 6, 2012, he filed a motion for leave to amend the petition, seeking to add a claim that trial counsel was ineffective for failing to question whether the flyover of his property occurred before the search warrant actually issued and that the affidavit filed with the request for a search warrant was based on hearsay. (Doc. 12-1, Ex. 35). The trial court denied Petitioner's motion for leave to amend his petition on October 11, 2012, but did not rule on Petitioner's original petition. (Doc. 12-1, Ex. 39). On July 8, 2013, Petitioner filed a second motion to amend, asserting five more specific claims relating to the search warrant and subsequent search of the Scranton Road property. (Doc. 25-13, Ex. 86).

On September 6, 2013, the trial court issued findings of fact and conclusion of law. (Doc. 25-2, Ex. 75). In it, the court first construed Petitioner's July 8, 2013, motion as a motion for leave to amend his original petition and denied leave. *Id*. at 4. Nevertheless, it then  acknowledged that while it previously denied Petitioner's motion for leave to amend his original petition, it neglected to deny the original petition or issue findings of fact and conclusions of law. *Id*. Therefore, "for the benefit of [Petitioner,]" the court stated, it would construe Petitioner's July 8, 2013, motion as a motion for leave to amend his original petition rather than a successive petition for post-conviction relief, and consider arguments presented in both motions to amend the petition. *Id*. The court proceeded to deny Petitioner's claims on the merits without an evidentiary hearing. *Id*. at 4-5. Finally, the court found all claims barred by the doctrine of *res judicata* because they could have been raised on direct appeal.  *Id*. at 6.

30

Petitioner appealed that judgment, and the state appellate court affirmed. (Doc. 25-6, Ex. 79); *West*, 2014 WL 1408298. The court observed that because the trial court had twice denied Petitioner leave to file a second amended petition, it should not have considered the arguments raised in that petition under Ohio Rev. Code § 2953.21(F), which governs post-conviction proceedings. *West*, 2014 WL 1408298, at *2. It also agreed with the trial court that Petitioner's claims were barred by *res judicata*. *Id*. As noted above, Ohio's *res judicata* rule bars courts from considering any issue that could have been, but was not, raised on direct appeal. *See Perry*, 10 Ohio St. 2d at 180. The state court explained that Petitioner's ineffective-assistance claims could have been raised on direct appeal and were addressed in his application to reopen the appeal. *West*, 2014 WL 1408298, at *2-3. Petitioner then appealed to the Ohio Supreme Court, which declined jurisdiction. (Doc. 25-12, Ex. 85).

Thus, the last state court to address the claims, the state appellate court, asserted two procedural bars preventing its review of these claims. *See Ylst v. Nunnemaker,* 501 U.S. 797, 805 (1991) (in determining procedural default, federal habeas courts look to the last reasoned state-court judgment); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000) (same). It found that Petitioner's failure to comply with Ohio law requiring leave to amend a post-conviction petition for the second time barred review of the claims raised in his second amended petition;[4] and all of Petitioner's post-

---

[4] The undersigned notes that the state appellate court asserted this procedural bar only as to the claims raised in Petitioner's second amended petition, not his first amended petition. *See West*, 2014 WL 1408298, at *2 ("Having twice denied West's leave to file a second amended petition, the court should not have considered the claims in the second amended petition on the merits."). As Respondent suggests, this procedural bar should have applied to the claims raised in Petitioner's first amended petition also, as the trial court denied Petitioner leave to make that amendment as well. But it is unnecessary to resolve this issue because all of Petitioner's ineffective-assistance claims clearly were procedurally defaulted based on the *res judicata* bar.

conviction ineffective-assistance claims were barred by the doctrine of *res judicata*. Both procedural bars are "independent and adequate state grounds" upon which to find the claims procedurally defaulted. *See, e.g., Lundgren v. Mitchell,* 440 F.3d 754, 763 (6th Cir. 2006) (federal habeas petitioner defaults federal claims in state court when a state procedural rule prevented state courts from reaching the merits of the claim); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (same regarding Ohio's *res judicata* rule).

Petitioner claims that neither procedural bar should preclude federal habeas review of his ineffective-assistance claims. Apparently with regard to the default caused by his failure to raise the claims in his original post-conviction petition and not obtaining leave to file his first or second amended petitions, Petitioner claims that he did raise the same claims in substance in his amended post-conviction petitions as he has raised here, even if he did not use the identical language. (Doc. 26, at 2-3). This argument misses the point, however. Petitioner defaulted the claims by failing to obtain leave to file his amended petitions with the claims he now asserts, not his failure to raise the identical claims here.

Petitioner further argues that the state courts improperly applied the *res judicata* bar to his ineffective-assistance claims, because the claims involved evidence and facts outside the record and therefore could not have been raised on direct appeal. (Doc. 26, at 4-5). Petitioner is correct that there is an exception to Ohio's *res judicata* doctrine where a petitioner presents evidence *dehors*, or outside, the record to support a claim on post-conviction. *See, e.g., State v. Smith*, 17 Ohio St. 3d 98, 101 n.1 (Ohio 1985). This exception applies where the defendant "had no means of asserting the constitutional claim there asserted until his discovery, after the judgment of conviction, of the factual basis for asserting that claim," so the claim "was not one that could have been raised . . . before the

32

judgment of conviction, and hence could not reasonably be said to have been . . . waived." *Perry*, 10 Ohio St. 2d at 179. Thus, "[g]enerally, the introduction in a [post-conviction] petition of evidence *dehors* the record of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of *res judicata*." *State v. Cole*, 2 Ohio St. 3d 112, 114 (Ohio 1982).

However, not just any extra-record evidence will overcome the *res judicata* bar. Evidence *dehors* the record will not suffice in cases where it "appear[s] so contrived, when measured against the overwhelming evidence in the record of trial counsel's competence, as to constitute no credible evidence and, thus, to justify the trial court's application of the principles of *res judicata*." *Id.* The *dehors* evidence must "demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record." *State v. Lawson*, 103 Ohio App. 3d 307, 315 (Ohio Ct. App. 1995). It must be "competent, relevant and material," and meet a "threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery."[5] *Id.* (internal quotation marks and citation omitted).

The Sixth Circuit has held that "an incorrect application of a state *res judicata* rule does not constitute reliance on an adequate and independent state ground." *See Wogenstahl v. Mitchell*, 668

---

[5] For example, Ohio courts have found the following evidence *dehors* the record to overcome the res judicata bar: evidence withheld by the state; an affidavit by a witness sworn to after the trial in which the witness states that his testimony at trial was false; and a DNA finding in cases that were heard before the use of DNA evidence. *State v. Jones*, 2002 WL 31812945, at *3 n.2 (Ohio Ct. App. Dec. 13, 2002).

F.3d 307, 341 (6th Cir. 2012). Federal habeas courts, therefore, can "decline[] to observe Ohio's procedural bar and instead . . . proceed[] to the merits of an ineffective-assistance claim when [they] conclude[] that Ohio improperly invoked its res judicata rule." *Richey v. Bradshaw*, 498 F.3d 344, 359 (6th Cir. 2007). But, again, the extra-record evidence must meet a threshold standard of cogency to overcome the *res judicata* bar. *See, e.g., Wogenstahl*, 668 F.3d at 342 ("Given the restrictions on the evidence *dehors* the record exception to Ohio's res judicata rule and given that Wogenstahl's [ineffective-assistance] claim regarding mitigation evidence at the state level relied nearly exclusively on evidence from the trial itself, we cannot conclude that the Ohio Court of Appeals improperly applied its *res judicata* rule to this claim.").

Here, the Ohio court of appeals correctly applied the *res judicata* bar to preclude review of Petitioner's ineffective-assistance claims. Petitioner points to the extra-record evidence he offered in support of his second amended post-conviction petition. (Doc. 26, at 5). This includes: (1) an affidavit and correspondence of Timothy West's attorneys relating to their unsuccessful attempts to obtain from the state and other attorneys documents relating to search warrants and the thermal imaging of the Scranton Road property; (2) the search warrant for that property issued on November 5, 2010; and (3) the affidavit in support of that search warrant. (Doc. 25-13, Ex. 86, at 12-31). But the state appellate court found this evidence insufficient to overcome the *res judicata* bar, reasoning:

> {¶ 10} West has on multiple occasions challenged the effectiveness of trial counsel's performance in failing to raise issues relating to the flyover of the commercial building at trial. His motion to suppress evidence argued that the results of the flyover, which in turn were used to obtain a warrant to search the building, were "undocumented, vague and subject to interpretation." On direct appeal, we stated: "There was no hearing on the motion to suppress the evidence obtained from the thermal imaging flyovers and searches because trial counsel waived it, and the affidavits in support of the search warrant is [sic] not part of the record on appeal." *State v. West*, 2012–Ohio–6138, at ¶ 25. Having raised questions regarding the flyover in his motion to suppress evidence, West could also have raised the

arguments that he now makes in postconviction proceedings: that there was no evidence to show that the flyover did not occur before the warrant authorizing it had actually issued; that there is no evidence to show that the flyover actually occurred; and that there were no copies of the affidavit submitted by the police when they asked for a search warrant to conduct a flyover. All of the facts going to these issues were available to West prior to trial, so they could have been raised in a motion to suppress evidence. Any argument that trial counsel failed to raise them could have been made on direct appeal, making them res judicata.

{¶ 11} The record also shows that West raised many of these same issues when he challenged the effectiveness of appellate counsel in failing to raise issues relating to the motion to suppress on direct appeal. In *State v. West*, 8th Dist. Cuyahoga Nos. 97398 and 97899, 2014–Ohio–198, *reopening disallowed*, Motion No. 463529, West argued that trial counsel was ineffective for waiving a hearing on the motion to suppress. Denying the motion to reopen the appeal, we specifically rejected on the merits his arguments that he was denied due process because the state failed to disclose favorable evidence; and that trial counsel was ineffective for waiving an evidentiary hearing on the motion to suppress evidence and failing to ensure that the record contained the evidence reviewed by the court in ruling on the motion to suppress evidence.

{¶ 12} An App.R. 26(B) application for reopening is a "collateral postconviction remedy[.]" *Morgan v. Eads*, 104 Ohio St.3d 142, 2004–Ohio–6110, 818 N.E.2d 1157, ¶ 22. Consistent with our precedent that res judicata applies not only to direct appeals, but to all postconviction proceedings in which an issue was or could have been raised, *see State v. Montgomery*, 2013–Ohio–4193, 997 N.E.2d 579, ¶ 42 (8th Dist.), we find that all of the claims raised in the petition for postconviction relief were addressed in the application to reopen the appeal and are res judicata for purposes of the amended petition for postconviction relief.

*West*, 2014 WL 1408298, at *2-3.

Petitioner has set forth no argument demonstrating error in the state appellate court's analysis of why his post-conviction ineffective-assistance claims were barred by *res judicata*. Petitioner appears to argue that because he submitted extra-record evidence with his second amended post-conviction petition, *res judicata* could not apply to these claims under Ohio law. *See* Doc. 16, at 16; Doc. 26, at 4-5. As explained above, however, that is not the case. The state court found that Petitioner already had raised his ineffective-assistance claims in his Rule 26(B) application to reopen

35

his direct appeal, and the court rejected them. Its conclusion was based in part on its finding that Petitioner could not show prejudice, as the trial testimony itself demonstrated "sufficient probable cause for the physical search." *West*, 2014 WL 265482, at *4. The search warrant and supporting affidavit, therefore, were merely cumulative to evidence the court already had considered and insufficient to overcome the *res judicata* bar. The state court, therefore, properly applied Ohio's *res judicata* doctrine to these claims, and they are procedurally defaulted. Moreover, Petitioner does not argue cause to excuse the default or prejudice arising from it, and does not claim actual innocence.

Accordingly, the undersigned recommends that the Court dismiss Petitioner's sixth ground for relief.[6]

## STANDARD OF REVIEW

When the basis for a federal habeas claim has been previously adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

---

[6] As just noted, even if Petitioner's trial counsel ineffective-assistance claims were ripe for federal habeas review, they would fail. As explained below, the state appellate court rejected the claims in reviewing Petitioner's appellate counsel ineffective-assistance claims. *See West*, 2014 WL 265482, at *4.  And the undersigned finds the state court's decision reasonable and fully supported by the record.

36

The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

State trial court factual determinations are presumed correct and a petitioner must present clear and convincing evidence to the contrary in order to overcome the correctness presumption. 28 U.S.C. § 2254(e). "It is a clearly established rule that errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in federal habeas corpus proceedings." *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).

## DISCUSSION

*Grounds Three and Four:  Ineffective Assistance of Appellate Counsel*

In grounds for relief three and four, Petitioner argues that he was denied his Sixth Amendment right to the effective assistance of appellate counsel. (Doc. 1, at 23-35). Specifically, he claims that appellate counsel was ineffective for failing to raise two claims on direct appeal:  (1) the trial court erred when it denied his motion to suppress incriminating statements he made to police; and (2) trial counsel was ineffective for waiving the evidentiary hearing on his motion to suppress and failing to preserve the record relating to that issue. *Id*. at 23, 29. Respondent does not address the merits of Petitioner's arguments beyond the conclusory statement that the state court

"reasonably interpreted the facts, properly applied the correct established federal precedent from *Strickland* and reasonably determined that West's ineffective assistance of appellate counsel claims lack merit." (Doc. 12, at 43).

Petitioner raised these claims in the state court of appeals in an application to reopen his direct appeal pursuant to Rule 26(B) of the Ohio Rules of Appellate Procedure. The appellate court adjudicated the claims on the merits and denied them. *West*, 2014 WL 265482, at *4-5. Petitioner appealed the court's denial of the claims to the Ohio Supreme Court, which declined jurisdiction. (Doc. 12-1, Exs. 52, 54). These claims, therefore, are preserved for habeas review.[7]

The Supreme Court long has recognized that the Sixth Amendment right to the effective assistance of counsel at trial "is a bedrock principle in our justice system." *Martinez v. Ryan*, 132 S. Ct. 1309, 1317 (2012). *See also Gideon v. Wainwright*, 372 U.S. 335, 342-44 (1963). The Court announced a two-prong test for habeas claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must demonstrate that counsel's errors were so egregious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id* at 687. Second, the petitioner must show that he or she was prejudiced by counsel's errors. To do this, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

---

[7]  Respondent acknowledges that Petitioner properly exhausted these appellate counsel ineffective-assistance claims. (Doc.12, at 38). But she also argues in response to these claims that "[i]nexcusable state court procedural defaults prevent West from raising his underlying trial court error and ineffective assistance of trial counsel claims as stand-alone claims in this proceeding." *Id*. at 37-38. The significance of the latter argument is unclear. Grounds three and four assert only claims of appellate counsel ineffective assistance. The undersigned, therefore, will not address that argument.

"*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (quoting *Strickland,* 466 U.S. at 689-90). The Supreme Court has observed that the standards imposed by *Strickland* and § 2254(d) are both "highly deferential," so that in applying them together, "review is 'doubly' so." *Harrington v. Richter,* 562 U.S. 86, 105 (2011).

The Supreme Court further has held that a defendant is entitled to effective assistance of counsel in his first appeal as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Thus, Petitioner must demonstrate that appellate counsel's performance was deficient, and that the deficient performance so prejudiced the appeal that the appellate proceedings were unfair and the result unreliable. *Strickland,* 466 U.S. at 687.

An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).

*Trial-Court Error*

Petitioner first argues that appellate counsel should have raised a claim on direct appeal

challenging the trial court's denial of his motion to suppress certain incriminating statements he made to police.  (Doc. 1, at 23-29).

The Fifth Amendment privilege against self-incrimination is implicated whenever an individual is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." *Miranda v. Arizona,* 384 U.S. 436, 478 (1966). Because custodial interrogations are said to be inherently coercive, *Miranda* established that a suspect must be apprised of certain rights to protect the privilege against self-incrimination, including the right to remain silent.  *Id.* at 444. As Petitioner notes, *Stone v. Powell*'s restrictions on federal habeas review of Fourth Amendment claims do not extend to a petitioner's claim that his conviction rested on statements obtained in violation of *Miranda* rights. *Withrow,* 507 U.S. at 688.

A suspect may waive his *Miranda* rights, however, "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda,* 384 U.S. at 444. "Even absent the accused's invocation of the right to remain silent, the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived [*Miranda*] rights' when making the statement." *Berguis v. Thompkins*, 560 U.S. 370, 382 (2010) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). The prosecution must establish waiver by a preponderance of the evidence. *Id.* at 384 (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)). "The waiver inquiry 'has two distinct dimensions':  waiver must be 'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception,' and 'made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* at 382-83 (quoting *Moran v. Burbine,* 475 U.S. 412, 421 (1986)).

Coercive police activity "is a necessary predicate to the finding that a confession is not 'voluntary.'" *Connelly*, 479 U.S. at 167. Whether a defendant has waived his *Miranda* rights and "voluntarily" confessed cannot rest on his state of mind alone. *Id.* at 165. The second prong of the *Miranda* inquiry focuses not on whether the "criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege," but on whether the "suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Colorado v. Spring*, 479 U.S. 564, 574 (1987). "Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Burbine*, 475 U.S. at 421 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). Courts must examine "the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

The prosecution, therefore, does not need to show that a waiver of *Miranda* rights was express. *Thompkins,* 560 U.S. at 384. "An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." *Id.* (citing *Butler*, 441 U.S. at 376). A waiver of *Miranda* rights may be implied through "'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" *Id.* (quoting *Butler*, 441 U.S. at 373).

The state appellate court was the last state court to review Petitioner's appellate counsel ineffective-assistance claim based on the trial court's denial of his motion to suppress his incriminating statements to police. It opined:

{¶ 18} West's fifth proposed assignment of error is that:

41

The trial court erred when it did not suppress the appellant's incriminating statements after conducting a hearing.

{¶ 19} West, through his fifth proposed assignment of error, argues that he did not waive his right against self-incrimination during the search of the Scranton Road property.

{¶ 20} The record clearly demonstrates that West was advised of his *Miranda* rights, specifically the right to remain silent:

> Q. By the way detective, do you see Todd West in the court here today?
>
> A. I do.
>
> Q. Point to him and describe what he's wearing?
>
> A. Long blue—long sleeve, light blue dress shirt on glasses.
>
> MR. LAVELLE: Glasses. Okay. May the record reflect that the witness identified the defendant?
>
> THE COURT: It may so reflect.
>
> Q. After identifying yourself as a police officer what did you do or say to the defendant?
>
> A. I told him we have a search warrant for the building and I advised him of his rights.
>
> Q. When you say you advised him of his rights, could you please tell the Court exactly what it was, these rights that you advised him?
>
> A. The right to remain silent; anything he said can and would be used against them in court; right to an attorney, and if you cannot afford one, one would be provided for him.
>
> Q. Now detective, what did the defendant say after you advised him of these rights?
>
> A. I asked if he understood, and he said, yes.
>
> Q. Were you the first person to have contact with Todd West?

42

A. I was.

* * *

Q. And were you present when Detective Klamert Mirandized Todd West?

A. I was.

Q. And did you inquirey [*sic*] after being—well, did you hear Todd West's response to the—after he was advised of his Miranda rights?

A. Yes.

Q. What was that?

A. I believe he just said, yes.

Q. Being that he understood?

A. Correct.

* * *

Q. Who specifically, among the officers, advised him of his constitutional rights?

A. That was Detective Klamert.

* * *

Q. Anybody threaten Mr. West?

A. No.

Q. Any officer threaten Mr. West?

A. No.

Q. And, again, he acknowledged understanding the Miranda rights which Detective Klamert had read to him in your presence?

A. Yes, he did.

(Tr. 164.)

{¶ 21} West was advised of his *Miranda* rights during the search of the Scranton Road property. Thus, West's fifth proposed assignment is without merit and fails to establish ineffective assistance of appellate counsel.

*West*, 2014 WL 265482, at *4-5.

Petitioner argues that the state appellate court's decision is both contrary to, and an unreasonable application of, Supreme Court precedent under § 2254(d)(1), and an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). (*See* Doc. 1, at 25-26).

Petitioner first argues that the state appellate court made an unreasonable determination of the facts "because nothing in the appellate court's opinion suggests the court considered the fact that Detective Cusumano stated that Mr. West was inside the building when his alleged rights were read to him." (Doc. 1, at 25). Petitioner explains that Detective Cusumano's testimony contradicted Detective Klamert's testimony that he read Petitioner his *Miranda* rights when they were outside the Scranton Road building. *Id*. at 24.  Petitioner does not explain, however, the significance of this fact.  "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White,* 660 F.3d 242, 250 (6th Cir. 2011). Whether Petitioner was inside or outside when Detective Klamert read him his *Miranda* rights is irrelevant to the question of whether or not he waived those rights. If Petitioner contends that the contradiction in testimony undermines Detective Klamert's credibility as a witness, that argument is also unavailing. Federal habeas courts must defer to a trial court's assessment of the weight of the evidence and the credibility of witnesses, and trial-court findings will not be disturbed unless they are clearly erroneous. 28 U.S.C.

44

§ 2254(e); *see also Batson v. Kentucky*, 476 U.S. 79, 98 n.21 (1986) (trial judges are to be accorded "great deference" on matters of witness credibility).

As to his claim that the state appellate court misapplied Supreme Court precedent, Petitioner primarily points to deficiencies in the state court's analysis. He claims the court's opinion shows that it did not consider: (1) the state's burden of proof to establish waiver; (2) the "totality of the circumstances" surrounding the waiver; (3) the absence of a written waiver or recorded oral waiver; or (4) the facts showing that Petitioner's waiver was knowing. (Doc. 1, at 25-29). Habeas petitioners are not entitled to relief under § 2254(d)(1), however, merely by identifying holes in a state court's analysis. As the Supreme Court recently observed in *Harrington v. Richter*, 562 U.S. 86 (2011),

> There is no text in [§ 2254(d)] requiring a statement of reasons. The statute refers only to a 'decision,' which resulted from an 'adjudication.'" As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning. . . . And as this Court has observed, a state court need not cite or even be aware of our cases under § 2254(d). . . . Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a "claim," not a component of one, has been adjudicated.

*Id.* at 98. Petitioner has not met his burden here.

Petitioner argues that "[l]aw enforcement testimony that Mr. West waived his rights is not supported by the record, or factual circumstances surrounding this alleged waiver" (Doc. 1, at 27), but provides little explanation. He asserts that: (1) he denied making any statements about the marijuana to police; (2) there was no written waiver of *Miranda* rights and no audio- or video-taped record of his alleged waiver, despite numerous police officers with cell phone cameras being present; (3) his arrest was at 5:40 p.m.; (4) he was handcuffed; (5) it was a rainy, cold, and overcast

45

day in November; and (6) he had never been arrested for a felony before. *Id*. at 25. But he fails to demonstrate that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. Indeed, the state court's conclusion that Petitioner waived his *Miranda* rights and that waiver was "voluntary, intelligent, and knowing" was fully supported by the testimony of Detectives Klamert and Moran, as excerpted by the state court, at the hearing on Petitioner's motion to suppress.  (*See* Doc. 12-2, Trial Tr. vol. 1, at 165-66, 171, 176, 177). The detectives' testimony on the issue was consistent, clear, and unambiguous; defense counsel had the opportunity to cross-examine them; and the trial judge found them credible. This claim lacks merit, and Petitioner's appellate counsel was not ineffective for failing to raise it on direct appeal.

Thus, the state appellate court's decision was neither contrary to, nor an unreasonable application of, Supreme Court precedent, nor was it based on an unreasonable determination of fact in light of the evidence before it. The undersigned recommends that the Court dismiss Petitioner's third ground for relief.

*Ineffective Assistance of Trial Counsel*

Petitioner also claims that appellate counsel should have raised a claim on direct appeal that trial counsel was ineffective for waiving a hearing challenging the flyover thermal imaging and search and seizure of Petitioner's property. (Doc. 1, at 29-35).

The state appellate court, on reviewing this claim, stated:

{¶ 14} West's fourth proposed assignment of error is that:

Trial counsel was ineffective for waiving the evidentiary hearing and failing to assure the record contains the evidence reviewed by the trial court after challenging the fly-over thermal imaging, the unlawful search and seizure of property.

{¶ 15} West, through his fourth proposed assignment of error argues that trial counsel erred by failing to request an evidentiary hearing with regard to a motion to

46

suppress vis-a-vis the affidavits and search warrants for the fly-over and subsequent search of the Scranton Road property.

{¶ 16} The decision to waive an evidentiary hearing, with regard to a motion to suppress, falls squarely within the realm of sound trial strategy and will not be second guessed absent demonstration that the strategy was unreasonable. *Strikland* [*sic*], *supra* . In addition, with regard to a direct appeal and a claim of ineffective assistance of trial counsel, the record must demonstrate not only that trial counsel's performance fell below an objective standard of reasonableness, but also that the failure prejudiced the defendant. *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

{¶ 17} Herein, West has failed to demonstrate how he was prejudiced by the waiver of an evidentiary hearing with regard to a motion to suppress. Moreover, the testimony adduced at trial clearly demonstrated that the results of the fly-over search were merely inconclusive and that West's surreptitious movements and the extremely strong smell of marijuana, detected outside of the Scranton Road, property provided sufficient probable cause for the physical search. (Tr. 188.) West's fourth proposed assignment of error is not well taken and fails to establish ineffective assistance of appellate counsel.

*West*, 2014 WL 265482, at *4.

Petitioner first argues that his counsel's decision to forgo a hearing on his motion to suppress evidence obtained from the search of his property was deficient and not reasonable trial strategy. (Doc. 1, at 31-32). He bases this contention on the fact that the motion to suppress supported a request for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), which established procedures for courts to review defendants' allegations concerning the veracity of statements in a search warrant affidavit.[8] *Id*. at 31. He contends that "[w]ithout a hearing the trial court had no reasonable basis for

---

[8] Petitioner states *Franks* dictates that courts *must* conduct a hearing when a defendant challenges the truthfulness of a search warrant affidavit. (Doc. 1, at 31). It does not. *Franks* held that a defendant is entitled to a hearing to challenge the validity of a search warrant only if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [ ] the allegedly false statement is necessary to the finding of probable cause . . . ." *Franks*, 438 U.S. at 155–56.

granting the motion." *Id*. Petitioner further argues that counsel's waiver of the hearing prejudiced his case because his motion to suppress presented strong arguments, which the state did not refute. *Id*. at 32-33. He reasons, again, that with a hearing, the motion would have been granted, and without the suppressed evidence, he would have been acquitted. *Id*.

These arguments lack merit. The record shows that defense counsel did not request an evidentiary hearing on evidence obtained during the search of Petitioner's property because he considered his written motion to be sufficient. The following exchange took place at the final pretrial:

> The Court:     . . . Next we come to the motion to suppress both the evidence and the statements and that was filed by Mr. Gibbons recently, although prior counsel filed a motion to suppress sometime ago.
>
> Mr. Gibbons, with respect to the motion to suppress the statements, you still wish to be heard on that?
>
> . . .
>
> Mr. Gibbons:  With respect to the search warrants, I'm certain that the Court will review the contents of all the affidavits in support of the search warrants and make a determination on that.
>
> Your Honor, with respect to any oral statements, I have conferred with my client and he represents to me that the police officer did not advise him of his constitutional rights, so I believe that it may be appropriate at some point in time for the officer to testify on that issue.
>
> The Court:    Would you like to have a hearing on that motion to suppress the statements?
>
> Mr. Gibbons:  I would.

(Doc. 12-2, Trial Tr. vol. 1, at 16-17).  In addition, contrary to Petitioner's assertion, the state did oppose the motion to suppress. The prosecutor informed the court at that pretrial that the state had opposed an earlier motion to suppress. *Id*. at 19. And the trial judge stated that she would take

48

additional time to carefully review the "voluminous" suppression motion before ruling on it. *Id*. at 21.

Petitioner offers nothing more than conclusory assertions and speculation to overcome the "strong presumption" that counsel's decision to rely on his written motion was made "in the exercise of reasonable professional judgment," or to prove prejudice. Even assuming he was entitled to a *Franks* hearing on the physical evidence portion of his suppression motion, Petitioner presents nothing other than his counsel's arguments *in the suppression motion itself* that could have been raised at the hearing. *See* Doc. 1 at 32-33. He identifies no evidence and advances no argument that counsel could have and should have presented at a hearing that was not in the written motion, much less evidence or arguments compelling enough to have changed the court's ruling. And without that, he can neither overcome the presumption that his counsel's decision was reasonable trial strategy nor prove that the motion would have prevailed after a hearing.

Moreover, the state court's conclusion that trial testimony "clearly demonstrated" that police had "sufficient probable cause for the physical search" was reasonable and fully supported by the record, further undermining Petitioner's claim that he was prejudiced by the lack of a hearing on his suppression motion.

Accordingly, Petitioner has not shown that the state appellate court's decision rejecting his appellate counsel ineffective-assistance claim based on trial counsel's decision to waive a hearing on suppressing physical evidence contravened or misapplied *Strickland* or its progeny. The undersigned recommends that the Court dismiss Petitioner's fourth ground for relief.

**CONCLUSION AND RECOMMENDATION**

Ground One is not cognizable on federal habeas review. Ground Two is procedurally defaulted. Ground Three fails on the merits. Ground Four is partly procedurally defaulted and partly fails on the merits. Ground Five is both non-cognizable and procedurally defaulted. Ground Six is procedurally defaulted. There has been no demonstrated need for an evidentiary hearing. Finally, Petitioner has not established any error resulting in a denial of fundamental fairness or cause to hesitate due to the probability of actual innocence. The undersigned therefore recommends the Petition be denied and dismissed in its entirety.

          s/James R. Knepp, II
         United States Magistrate Judge


*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).